■ FRANKLIN ASSOCIATES, Appellant, v GSL ENTERPRISES, INC., et al., Respondents. [624 NYS2d 396] —Order, Supreme Court, New York County (Ira Gammerman, J.), entered June 14, 1993, which granted the motion of defendant GSL Enterprises, Inc. for partial summary judgment on its second counterclaim and first cross-claim to the extent of declaring that GSL is entitled to a declaration that the lease has been validly terminated and is entitled to a discharge of the mortgage lien of defendant Manufacturers and Traders Trust Company (M & T Bank), unanimously affirmed, with costs.

Order of the same court and Justice entered May 24, 1993, which granted M & T Bank's cross-motion for summary judgment dismissing plaintiff Franklin Associates' first cause of action in the amended complaint, reversed, on the law, the cross-motion denied and summary judgment granted to Franklin Associates on its first cause of action, declaring that its surrender of the lease is binding and enforceable against GSL, that Franklin is not responsible for any obligations under the lease incurred after September 6, 1991, and that M & T Bank shall not be inequitably affected by such declaration, with costs.

The dispute between the parties centers around Franklin Associates' attempt, on September 6, 1991, to surrender its net ground lease of the Broadway American Hotel to defendant GSL, the landowner.

Pursuant to the terms of Article Twenty-Ninth (A) of the lease, dated March 1, 1989, Franklin had an absolute right, without GSL's consent, to mortgage the lease and its leasehold interest.

However, paragraph (B) of the same article entitled "Rights of the Leasehold Mortgagee" provides, in pertinent part, that, "except for any termination of this Lease by reason of a default by Lessee hereunder, no cancellation, surrender, acceptance of surrender, or modification of this Lease shall be binding upon a leasehold mortgagee or affect the lien of the mortgage thereof, without the prior written consent of the leasehold mortgagee."

Paragraph (B) (3) also gives such leasehold mortgagee the right to remedy any default by the lessee and paragraph (B) (4) further provides that if such default is not remedied within the applicable grace period, such leasehold mortgagee is entitled to not less than 60 days additional written notice within which to cure the default and, "if Lessor shall not elect to terminate this Lease and shall instead bring a proceeding to dispossess Lessee and/or other occupants of the premises or to re-enter the premises or to terminate this Lease, by reason of such default", then the leasehold mortgagee is entitled to 60 days written notice within which to cure such default.

Franklin then obtained mortgage loans totalling $9.25 million from M & T Bank for the purpose of renovating the hotel, for which it gave limited personal guarantees from its individual partners and pledged the lease as collateral.

By March 1991, Franklin was in the midst of renovating the hotel but, apparently because of cost overruns and a turndown in the real estate market, the financial underpinning of the project was shaky, Franklin's $1 million letter of credit representing security required by the lease had expired, and it was in danger of default. Franklin and GSL thereupon entered into a second modification of the lease, which, in return for an injection of $2.6 million by Franklin out of which it agreed to expend no less than $1.6 million for the physical improvement of the premises and to pay its rent and tax contributions through August 31, 1991, a portion of its monthly rent was deferred until September 1, 1992 and, upon the concurrent execution of a UCC security agreement on the furniture and fixtures of the hotel, the requirement that it maintain a $1 million security deposit was deferred until completion of the renovations, which Franklin agreed to complete by September 1, 1991.

Paragraph 5 of the modification agreement provides:

"5. If after September 1, 1991, provided the work as set forth above is completed, should Tenant monetarily default under the Lease, and such default continues for a period of fifteen (15) business days after Landlord gives notice to Tenant of said default, then, and in that event, Tenant agrees to peacefully surrender possession of the premises without contesting Landlord's right to obtain possession through summary or other legal proceedings, and further executes and delivers a Surrender Agreement in proper form for recording and a Termination of the Lease Memorandum, and at such time, the Tenant will turn over all of its books and records used to

operate the hotel, leases, rental records and security deposits, if any, of tenants, and plans, specifications and paid bills and other documentation of construction. Should Tenant so default concurrently upon delivery of such possession and delivery of the documents, the parties will enter into a mutual agreement releasing each other from any claim they may have against each other provided Tenant's architect certifies that the Tenant has completed the work in Schedule A, or monies have been set aside for completion of the work and that all subcontractors, materialmen and tradespeople have been fully paid and releases have been delivered, and that title is the same as when the Lease was entered into, other than a Leasehold Mortgage held by Manufacturers' & Traders Bank which appears of record. In the event the elevators are not completed by September 1, 1991, then, and in that event, the Lessee shall proceed with due diligence to complete the same at its own cost and expense.

"Except for the aforementioned modifications, all other terms, covenants and conditions of the Lease, and any collateral documents executed in connection therewith, shall remain in full force and effect and any alleged default is deemed to have been cured."

Such modification agreement was executed by GSL and Franklin and specifically "consented to" by M & T Bank.

Thus, it is clear in reading Article Twenty-Ninth of the lease in conjunction with paragraph 5 of the modification agreement that after September 1, 1991, at which time it was expected that Franklin would have completed all the renovations, Franklin could walk away from its lease obligation to GSL and surrender the premises, whereupon GSL and Franklin would enter into an agreement mutually releasing each other from any further liability to each other under the lease. At the same time, it is clear that neither individually nor jointly could they terminate M & T Bank's rights as the leasehold mortgagee without its consent. However, failing that, the lease could then be terminated in a summary dispossess proceeding which, as it turns out, was the method chosen by GSL, whereupon M & T Bank's mortgage lien could be discharged.

Thereafter, in late August 1991, Franklin notified GSL that it intended to surrender its lease and to that end prepared formal surrender of lease documents and sent them to GSL's attorney for his review and comment. On September 6, 1991, Franklin and GSL met and Franklin proffered the surrender

documents which had already been signed by it, but GSL refused to sign such documents without the prior approval of M & T Bank, which refused such approval.

GSL served a notice of default dated September 6, 1991 on Franklin with a copy to M & T Bank, advising Franklin that it had failed to pay the rent due on September 1, 1991 and that it had fifteen days to cure such default. By letter dated September 13, 1991, GSL asked M & T Bank to take over the maintenance and operation of the hotel, which request was denied, whereupon GSL entered into possession of the hotel to protect its interests. By notices dated October 17 and October 25, 1991, GSL then notified M & T Bank of Franklin's default and advised the bank of its right to cure such default within sixty (60) days pursuant to Article Twenty-Ninth (B) of the lease. By letter dated December 23, 1991, M & T Bank replied and advised GSL that it was willing to discuss some reasonable modification of the economics of the lease, waived nothing, and expressly reserved its rights and remedies with respect to the lease, its leasehold mortgage and otherwise.

Thereafter, after advising M & T Bank that it had failed to cure and giving the appropriate notices to Franklin, GSL commenced a summary dispossess proceeding against Franklin, which resulted in a stipulation of settlement dated July 13, 1992, in which Franklin consented to entry of a judgment of possession and issuance of a warrant of eviction with the parties expressly reserving their conflicting claims regarding the surrender and whether or not the lease terminated on September 6, 1991, as well as all monetary claims between them, for determination in a plenary action in Supreme Court.

GSL then notified M & T Bank by letter dated September 25, 1992, that the lease was terminated on September 21, 1992, pursuant to the warrant of eviction issued that day and advised M & T Bank that pursuant to Article Twenty-Ninth (B) (7) of the lease that it could request a new lease of the premises in its own name on the same terms contained in the terminated lease. By letter dated October 20, 1992, M & T Bank rejected GSL's attempt to cut off its leasehold mortgage lien or its rights to a new lease, because the conclusion of the summary proceeding by stipulation was tantamount to a surrender, which was prohibited by the lease and because there was no determination of the amount of rent due under the lease, which would be a significant factor in any decision to seek a new lease.

In December 1991, Franklin commenced this action against GSL, alleging two causes of action, the first seeking a declaration that it properly surrendered the lease to GSL on September 6, 1991 and the second seeking an accounting to determine Franklin's and GSL's respective rights and liabilities regarding the premises. GSL then moved to dismiss the complaint for failure to join M & T Bank as a necessary party and Franklin cross-moved to have GSL's motion considered as one for summary judgment. By order entered August 24, 1992, the court (Lebedeff, J.), denied the cross-motion, finding that "a general release in relation to the surrender was not signed and that the full record contains equivocal acts by the landlord", and directed plaintiff to serve an amended complaint adding M & T Bank as a party and alleging, at a minimum, that M & T Bank would not be inequitably affected by a determination that the lease had been properly surrendered.

Franklin complied and issue was joined with GSL asserting, insofar as pertinent to this appeal, a second counterclaim, alleging the judgment of possession and warrant of eviction in its favor and seeking an order directing Franklin to execute and deliver to GSL an instrument, suitable for recording, cancelling the lease. It also asserted a first cross-claim against M & T Bank, seeking a declaration that the lease was validly terminated in the summary proceeding and removing the bank's mortgage lien thereon. GSL then moved for partial summary judgment on the foregoing counterclaim and cross-claim and M & T Bank cross-moved for summary judgment dismissing Franklin's first cause against it.

The IAS Court, in a decision entered on the record, found that the lease was terminated with the judgment of possession and, therefore, GSL was entitled to a declaration that the lease had been validly terminated and is entitled to a discharge of the mortgage lien. The court reserved decision on M & T Bank's cross-motion but, thereafter, in the second order appealed from, the court directed the County Clerk to discharge on his records the various documents recorded in connection with the bank's mortgage and granted M & T Bank's cross-motion for summary judgment dismissing Franklin's first cause of action, the court finding that aside from the subsequent termination of the lease in the summary proceeding, inasmuch as Franklin never got written permission from the bank, its proffered surrender was without effect. Franklin's second cause of action for an accounting was referred to a Referee and we are now informed that an application has been made to consolidate such cause of action with a subse-

quent pending action brought by M & T Bank against Franklin to recover on various loan instruments.

Franklin has abandoned its appeal from the June 14, 1993 order and M & T Bank has neither appealed from that order, nor responded to Franklin's appeal from the order of May 24, 1993.

With regard to that order, Franklin argues that, in light of M & T Bank's consent to the modification of the lease, its further consent to Franklin's surrender of the lease was not required; that M & T Bank's insistence that it still enjoyed the right to approve any surrender of the lease created ambiguities in the 1991 modification which should not have been resolved summarily; and, the Civil Court's judgment of possession did not vitiate Franklin's and GSL's right to litigate the surrender.

GSL responds that Franklin's purported surrender of the lease was ineffective because it was not agreed to in writing by M & T Bank and GSL. It further argues that under no circumstances would a grant of summary judgment to Franklin be warranted, a result Franklin does not request in its appellate brief or below. Even if this Court were to find an ambiguity in the lease modification, it argues, there are triable issues of fact regarding the intent of the parties and Franklin's compliance with the provisions of such modification agreement.

Although, in its reply brief, Franklin like GSL argues that the IAS Court's grant of summary judgment was inappropriate, it contends that, even if the 1991 modification is read without resort to extrinsic evidence, then the right to surrender, for which Franklin bargained, is plain and, if anyone were entitled to summary judgment below, it was Franklin.

Finding no essential issues of fact but rather a relatively straightforward issue of contract construction, we agree with Franklin and accordingly reverse to the extent indicated and grant summary judgment to Franklin on its first cause of action against GSL.

As indicated earlier, a plain reading of paragraph 5 of the modification agreement reflects that, in return for Franklin's infusion of $2.6 million, GSL and Franklin agreed that in the event of a default by Franklin after September 1, 1991, Franklin would peacefully surrender possession and execute and deliver the necessary surrender documents. "[C]oncurrently upon delivery of such possession and delivery of the documents, the parties *will* enter into a mutual agreement

releasing each other from any claim they may have against each other" (emphasis added). Clearly, such language was mandatory in nature and did not give GSL the option of rejecting such surrender absent Franklin's failure to comply with the conditions set forth in that paragraph. The fact that such a surrender would not be binding on M & T Bank and that its mortgage lien would continue to attach to the lease pursuant to Article Twenty-Ninth of the lease has no bearing on GSL's and Franklin's rights vis-à-vis each other. Thus, when faced with Franklin's proffered surrender, meeting all the conditions specified in the modification agreement, GSL had no choice, but was required by the terms of the agreement to sign the mutual releases proffered by Franklin.

That the parties realized that M & T Bank's mortgage lien would continue absent M & T Bank's consent to the surrender, is reflected in the provision in paragraph 5 that, in the event of a surrender and termination of the lease, "title is the same as when the Lease was entered into, other than a Leasehold Mortgage held by Manufacturers and Traders Bank which appears of record." To the extent that Article Twenty-Ninth of the lease may be unclear as to the effect of Franklin's surrender and default on M & T Bank's rights, it still does not relieve GSL from its obligations under the modification agreement and GSL's subsequent bringing of the summary proceeding, as reflected by the parties' stipulation, was not for the purpose of settling their dispute regarding the purported surrender, but clearly was for the purpose of terminating the lease so as to force the recalcitrant bank to either exercise its options under the terms of Article Twenty-Ninth or else to forfeit its mortgage lien. Likewise, the IAS Court's holding, in its June 14, 1993 order, that the lease had been validly terminated by the summary proceeding only affected GSL's right to a discharge of the bank's mortgage lien and was irrelevant to any resolution or rights as between Franklin and GSL, which hinges on whether Franklin's surrender fully complied with the terms of the modification agreement.

There is no issue of fact in that regard, as reflected by the affidavit of Jane Goldman, one of three principals of GSL, who attended the September 6, 1991 meeting at which Franklin tendered the surrender agreement and other documents. In it she states that she and her coexecutors decided not to sign the proffered agreement because of their concern about the bank's rights as leasehold mortgagee. The affidavit of GSL's attorney, who also was present and who acknowledged receipt of the documents proffered by Franklin, is more to the point. In it he

states that "the executors were concerned that accepting a surrender prior to obtaining the leasehold mortgagee's consent, while it might terminate the lease, might also leave GSL in the untenable position of having its property subject to a lien in excess of $9,000,000 after the Lease's termination." This position is confirmed by the affidavit of Alan H. Goldman, another of GSL's principals, in which he states that the actions of Franklin and M & T Bank created a dilemma for GSL in that Franklin was no longer paying rent; yet, GSL could not rent the premises to another hotel operator because the premises were encumbered with the lease and the $9.25 million leasehold mortgage. It is thus evident that, contrary to GSL's present argument that there are issues of fact regarding Franklin's compliance with the terms of paragraph 5 of the modification agreement, its refusal to agree to Franklin's surrender was not due to any inadequacy in the documents proffered by Franklin, but rather to GSL's desire to eat its cake (the renovated hotel) and have it too (mortgage free). Moreover, GSL's argument that, at the time of the surrender, Franklin's default under the lease had not continued for fifteen business days as required by the lease modification, is insufficient to warrant the denial of summary judgment to Franklin inasmuch as the worst that could be found is that Franklin's proffer of the surrender documents was premature. Franklin's tender, however, was a continuing one and there is no claim that it was either withdrawn or rejected for that reason.

To the extent that there remain any issues as to any amounts due to GSL from Franklin pursuant to the lease modification, such may be resolved in Franklin's second cause of action. Concur—Sullivan, J. P., Wallach, Kupferman and Ross, JJ.